IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELINA ZHENG as** | : | |
| **Administrator of the Estate of** | : | |
| **JOSEPH HOLGUIN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **Docket No. 4:09-CV-1028** |
| | : | |
| **SUPERINTENDENT JOHN A.** | : | **Judge Sylvia Rambo** |
| **PALAKOVICH, SUPERINTENDENT** | : | |
| **PAUL K. SMEAL, LISA G.** | : | |
| **HOLLIBAUGH, GEORGE WEAVER,** | : | |
| **LT. C. GROVE, MHM** | : | |
| **CORRECTIONAL SERVICES, INC.,** | : | |
| **DR. FRANZ BAUER,** | : | |
| **PRISON HEALTH SERVICES INC.,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Before the court is Defendants MHM Correctional Services, Inc. ("MHM"),

Dr. Eugene Polmueller, Dr. Robert Mellon, and Dr. Franz Bauer's motion to

dismiss, (Doc. 48), Plaintiff's complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6). For the reasons that follow, Defendants' motion will be

granted in part and denied in part.

1

## I.   BACKGROUND[1]

### A.  Parties

Plaintiff, Angelina Zheng, is the Administratrix of the estate and sister of decedent Joseph Holguin.  (Compl. ¶ 1.)  At all times relevant, Holguin was an inmate at the State Correctional Institute at Smithfield ("SCI- Smithfield").  (*Id.* ¶ 17.)

Defendants who brought this motion are MHM, Dr. Eugene Polmueller, and Dr. Franz Bauer.[2]  MHM is a private company providing mental health services to SCI-Smithfield.  Dr. Polmueller is the director of psychiatry at SCI-Smithfield, and it employed by MHM.  (*Id.* ¶ 10.)  Dr. Bauer is also employed by MHM, and is a psychiatrist at SCI-Smithfield.  (*Id.* ¶ 9.)

### B.  Factual History

At 11:42p.m. on October 29, 2007, Holguin was pronounced dead after hanging himself from his desk with a bed sheet.  (*Id.* ¶¶ 36, 37.)  Prior to his death, Holguin had made multiple attempts to contact a psychiatrist and be placed on

---

[1]  As required in a motion to dismiss, the Court accepts as true all well pled facts in the Complaint.

[2]  Dr. Robert Mellon is also listed as a party to this motion.  However, Dr. Mellon has filed a separate motion based on Plaintiff's failure to file a certificate of merit.  (Doc. 74.)  That motion is not yet ripe for disposition. Therefore, the court will reserve judgment with regard to Dr. Mellon until it adduces the threshold question of whether he is a proper party.

medication. Before being transferred to SCI-Smithfield, Holguin had been an inmate at SCI-Montgomery, where, on March 7, 2006, he was involuntarily committed[3] for depression and suicidal tendencies. (*Id.* ¶ 63.) It was determined at this time that Holguin was severally mentally disabled, and in need of both continued treatment and a transfer so he could be closer to his family. (*Id.*)

On or about August 10, 2006, Holguin was transferred to SCI- Smithfield. (*Id.* ¶ 64.) On August 15, 2006, Holguin requested to see a psychiatrist and was told that he would receive a mental health evaluation on September 5, 2006,[4] . (*Id.* ¶ 65.) However, on September 5, 2006, when the mental health care professional arrived at the cell block, Holguin was told he was not on her list of patients to see. (*Id.*) On this same date, Holguin completed a form requesting that he be placed on medication. (*Id.* ¶¶ 18, 65.) On September 10, 2006, Holguin, still not having been seen by Dr. Franz Bauer, refused to take his medication due to his clinical depression, despite the fact that he had been taking this medication for years. (*Id.* ¶ 66.*) On October 2, 2006, after repeatedly sending requests to see a doctor, Holguin was told that the psychological unit would be informed that Holguin wished to see a mental health care specialist. (*Id.* ¶¶ 66, 67.) On October 5, 2006, Holguin filled

---

[3] The complaint is not clear on exactly where Holguin was committed to.

[4] The complaint states this date as being in 2007, but based on the other paragraphs of the complaint it appears 2007 is a typographical error.

out another request slip to be placed on medication because he was depressed and "did not want to end up hurting himself." (*Id.* ¶ 19.)

On October 20, 2006, Holguin was finally evaluated by Dr. Bauer. (*Id.* ¶ 68.) He was told by Dr. Bauer that he would be placed back on all of his medications. (*Id.*) However, when the nurse returned on October 23, 2006, she informed Holguin that the only medication he would be getting was for sleep. (*Id.*) Plaintiff believes that Dr. Bauer reduced Holguin's prescription for psychotropic medications. (*Id.*)

On December 4, 2006, Holguin filled out an Inmate Request directed to the health care administrator, George Weaver, asking to be placed back on his medication stating, "I have been getting real depressed and I do not want to hurt myself. So could you please help me . . . " (*Id.* ¶¶ 20, 69.) Subsequently, on December 18, 2006, Holguin filled out another request to be placed back on his medication. (*Id.* ¶ 18.)

Sometime in the first few days of January 2007, Dr. Bauer had his monthly meeting with Holguin. (*Id.* ¶ 70.) Holguin was non-responsive during this evaluation and as such, Dr. Bauer reduced Holguin's Elavil prescription from 150 milligrams to 100 milligrams. (*Id.*) Following this meeting, on January 8, 2007, Holguin filed an Official Inmate Grievance form with the facility grievance

coordinator, Lisa Hollibaugh, asking to be placed back on his medication because he was a diagnosed schizophrenic with a history of attempted suicide. (*Id.* ¶¶ 22, 70.) Holguin filed four more inmate request forms on February 6, 2007, to Defendants Dr. Bauer,[5] Smeal, Weaver and Palakovich.[6] (*Id.* ¶ 23.) In each form he stated he was depressed and needed to be placed back on his medication. (*Id.*) A response from staff dated February 2, 2007 stated that they would check with the psychiatric department to see why Holguin had been taken off his medication. (*Id.* ¶ 74.)

On February 16, 2007, Holguin was charged with misconduct for refusing to take a cell mate. (*Id.* ¶ 24.) Another inmate on Holguin's cell block filed a grievance on Holguin's behalf explaining that because of Holguin's mental illness taking on a cell mate would be far too stressful. (*Id.* ¶ 25.) On May 4, 2007, Holguin was again written up for refusing a cell mate. (*Id.* ¶ 27.)

On April 9, 2007, a search of Holguin's cell revealed that his bed sheet had been torn into strips. (*Id.* ¶ 26.) A hearing was held regarding the incident on April 13, 2007. (*Id.*) Despite knowing that torn bed sheets are commonly used in prison

---

[5] In the request to Dr. Bauer, Holguin inquired why he had been taken off his medication and stated, "getting real depressed . . . I feel I still need my medications." (Compl. ¶ 72.)

[6] These individuals are all parties in this action, but only Dr. Bauer is a party in the instant motion.

suicide attempts and being aware of Holguin's mental illness, instead of sending him for psychiatric treatment, he was instead charged $8.50 for the damaged property. (*Id.*)

On June 6, 2007, a Lieutenant Grove insisted that Holguin accept a cell mate and told him the extraction team would be used if he again refused. (*Id.* ¶ 28.) Several hours later, Holguin was found slicing his arm with a piece of razor and was put on twenty-four observation. (*Id.*) A psychiatric evaluation was scheduled for June 21, 2007. (*Id.* ¶ 75.) In the meantime, Holguin was told by Defendant Palakovich that if he returned to the Restricted Housing Unit (RHU)[7] and accepted a cell mate, he would be able to return to the general population. (*Id.* ¶ 29.) On June 14, 2007, Holguin was placed back in the general population. (*Id.* ¶ 30.) Just four days later, on June 18, 2007, Holguin was found in his cell with blood on his shirt and a razor in his hand cutting his left wrist. (*Id.* ¶ 31.) Holguin informed the officer who found him that he was depressed. (*Id.*) Due to this incident, Holguin was again placed in the RHU. (*Id.*)

On July 16, 2007, presumably while still in the RHU, Holguin filed a request to A. Shope, another psychiatrist at the prison, asking for a summary of his mental

_____

[7] According to the complaint, the RHU is used for punishment and administrative purposes and is not appropriate for inmates with mental illnesses. (Compl. ¶ 29.)

diagnosis.  (*Id.* ¶ 76.)  Holguin was told that he had previously been diagnosed with either Bi-Polar disease or major depression but that this had been changed to personality disorder.  (*Id.*)  However, Holguin was also informed "that it does not appear that they have settled on a particular diagnosis but that Borderline personality and anti-social personality seem to apply."  (*Id.*)

On August 14, 2007, Holguin filed another inmate request asking that he be put back on his medication because he was thinking about "getting depressed and acting out."  (*Id.* ¶ 77.)  He was told by a staff member he would see a psychiatrist by the name of Dr. Dominguez.  (*Id.*)  On September 10, 2007, Holguin again expressed his desire to be placed back on medication and was told by Shope that this would probably happen within a day or two of him meeting with Dr. Dominguez.  (*Id.* ¶ 78.)

On October 29, 2007, Holguin was found dead after he hung himself from his desk with a bed sheet.  (*Id.* ¶¶ 36, 27.)

Plaintiff alleges that it is MHM's policy or custom to not require mental health requests to be promptly evaluated and instead, no matter how severe the case, only send a psychiatrist to see an inmate once a month.  (*Id.* ¶ 79.)  Further, Plaintiff alleges that MHM's policies prevented Plaintiff from receiving proper in or out-patient psychiatric care, and that these policies were motivated by MHM's desire to

maximize profits. (*Id.* ¶ 80.) Plaintiff avers that due to this policy, Holguin was not receiving his proper medication which led to his mental health deterioration and ultimately caused his death. (*Id.*)

### C. <u>Procedural History</u>

On June 1, 2009, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 alleging violations of Holguin's Eighth and Fourteenth Amendment rights, as well as state law claims of medical negligence and corporate liability. (Doc. 1.) The complaint was amended on October 7, 2009, to add additional Defendants. (Doc. 33.) On December 1, 2009, Defendants filed the instant motion to dismiss. (Doc. 48.) Plaintiff's opposition brief was filed on February 9, 2010, (Doc. 67), to which Defendants replied on February 19, 2010 (Doc. 69). The motion is now ripe for disposition.

## II. <u>Legal Standard</u>

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)). The

complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the

complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

III. **Discussion**

Plaintiff brings this action as administratrix of the Estate of Holguin pursuant to 42 U.S.C. § 1983, alleging violations of Holguin's Eighth and Fourteenth Amendment rights by subjecting him to cruel and unusual punishment through deliberate indifference to his serious medical needs. Plaintiff also asserts state law claims of medical negligence against the individual doctors and a claim for corporate liability against MHM.

Defendants counter that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 because there was no policy, practice, or custom of MHM and because Plaintiff has failed to allege deliberate indifference on the part of any of the individual doctors. Furthermore, Defendants argue that Plaintiff has failed to state a claim of corporate liability as this is a limited cause of action in Pennsylvania which does not extend beyond hospitals.[8] The court will address each of these arguments in turn.

## A.    <u>Section 1983</u>

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that the conduct deprived the plaintiff of a right,

---

[8] Plaintiff also brings a claim for medical malpractice, however, as neither party briefed this issue the court will not address it and the claim will proceed.

privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendant's conduct must have a causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980). Furthermore, for liability to attach, it must be shown that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). In this case, there is no dispute that Defendants were acting under color of state law. Therefore, only the deprivation of a right, privilege or immunity under the Constitution need be discussed.

In the Third Circuit, the deliberate indifference of a defendant which leads to a prisoner's suicide can constitute a valid Eighth Amendment claim under 42 U.S.C. § 1983 if a plaintiff establishes the following three elements: "(1) the detainee had a particular vulnerability to suicide, (2) the [defendant knew of and disregarded that vulnerability],[9] and (3) those [persons] acted with reckless

---

[9] The Third Circuit in *Colburn v. Upper Darby Twp.*, 946 F.2d 1017 (3d Cir. 1991), articulated the second prong of the test as whether the defendant "knew or should have known" of the prisoner's vulnerability, *id.* at 1023, but that standard has been modified by the Supreme Court. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that a defendant cannot be found liable under the Eighth Amendment "unless the officer knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Thus, the *Colburn* test has been re-characterized to conform to the standard established by the Supreme Court. Other courts have likewise held that the plaintiff in a prison suicide case must show that "'defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.'" *Minix v. Canarecci*, No. 09-2001, 2010 WL 668893, at *4 (7th Cir., Feb. 26, 2010). *Accord, Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006); *Gray v.*

indifference to the detainee's particular vulnerability." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (citations omitted).

### 1. Particular Vulnerability to Suicide

Plaintiff has sufficiently pled that Holguin had a particular vulnerability to suicide. Holguin had been diagnosed with depression and suicidal tendencies. He requested psychiatric help on multiple occasions and even stated in these requests that he was afraid he was going to hurt himself. It seems apparent that Joseph Holguin was concerned with the danger he posed to himself, and he expressed this concern on multiple occasions.

### 2. Knew and Were Deliberatly Indifferent to Detainee's Serious Medical Need

#### a. MHM

MHM is a private corporation that contracts with the state of Pennsylvania to provide mental health treatment for inmates at SCI- Smithfield. A private corporation contracting with a state cannot incur § 1983 liability by way of *respondeat superior*. *See Natalie v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003); *see also Monell v. Dep't of Sec. Servs.*, 436 U.S. 658, 691-94 (1978) (holding that a municipality may not be held liable under § 1983 on a theory

---

*City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

of *respondeat superior*). In order to hold a private corporation liable under § 1983, a plaintiff must show that he suffered a constitutional deprivation resulting from an official corporate policy or custom. *See Natale*, 318 F.3d at 583-84 (applying *Monell* to Prison Health Services- a MHM like corporation which provides medical care to the prisons). A policy is an official proclamation or edict, while a custom is "so permanent and well settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Phila*, 895 F.2d 1469 1480 (3d Cir. 1990) (citations omitted)).

In the instant complaint, Plaintiff alleges that MHM had a policy of only sending a psychiatrist to see inmates once a month, no matter how severe the inmates mental state. Plaintiff claims that this one-a-month practice was motivated by MHM's desire to earn the maximum amout of profit possible. Plaintiff claims that due to this policy or practice, Holguin was taken off his proper medication causing his mental state to deteriorate so badly that he committed suicide. Taking these allegations as true, Plaintiff has sufficiently pled that MHM had a policy or practice of not properly caring for inmates and were deliberately indifferent to the serious medical needs of Holguin, resulting in his eventual suicide. This is particularly true when these same allegations are paired with the specific facts of Holguin's case. Namely, that despite Holguin's repeated requests for a mental

health evaluation and a change in his medication, he was only seen approximately once a month by a psychiatrist. This is true from the time he was transferred in August of 2006, to the time of his death in October 2007. For these reasons, the motion will be denied as to Plaintiff's section 1983 claims against MHM.

### b. **Doctor Bauer**

Plaintiff also brings claims against Doctor Bauer alleging Bauer acted under color of state law by being deliberately indifferent to Holguin's serious medical needs. It is specifically alleged that the mental health evaluation requests Holguin completed were sent to Dr. Bauer. This establishes Dr. Bauer's knowledge. When Dr. Bauer evaluated Holguin on October 20, 2006, Dr. Bauer informed Holguin he would be placed back on all his medication. However, on October 23, 2006, when the nurse stopped by she told Holguin he would only be getting medication for sleep. Plaintiff alleges Dr. Bauer reduced three of the psychotropic substances Holguin was on. In the beginning of January, Dr. Bauer met with Holguin and afterwards reduced Holguin's Elavil dosage from 150 milligrams to 100 milligrams. This establishes Dr. Bauer's disregard of Holguin's serious medical need.

These allegations are sufficient to permit Plaintiff's complaint to survive a motion to dismiss with regard to Dr. Bauer. Dr. Bauer was aware of Holguin's specific particularity towards suicide. Holguin's medical evaluation requests were

sent to Dr. Bauer. Dr. Bauer was aware Holguin was concerned for his safety and wished to be placed back on his medications. These are sufficient allegations at this stage in the proceedings to infer that Dr. Bauer was aware of Holguin's serious medical needs and was deliberately indifferent to these needs. Defendants' motion as to Dr. Bauer will be denied.

### c. Dr. Polmueller

Plaintiff also asserts that Dr. Polmueller, the head of psychiatry for MHM, was deliberately indifferent to Holguin's vulnerability to suicide. However, the only allegation specific to Dr. Polmueller is that, on October 1, 2007, after Holguin was found in his cell with a piece of metal he planned on swallowing and stated that he "could not take it anymore," Dr. Polmueller placed Holguin on fifteen minute observation. This can not be considered deliberate indifference on the part of Polmueller. Dr. Polmueller did not conduct the evaluations of Holguin. Nor were Holguin's repeated requests for help sent to Dr. Polmueller. The only thing Dr. Polmueller did was place Holguin on fifteen-minute observation after Holguin exhibited worrisome behavior, this does not establish deliberate indifference.

Furthermore, it does not appear from the face of the complaint that allowing Plaintiff to amend will alter the result. There is simply nothing in the complaint, besides a speckling of general allegations against all Defendants, which suggests

that Dr. Polmueller played any role in Holguin's eventual suicide besides placing him on a suicide watch — a course of action wholly appropriate under the circumstances. For these reasons, Dr. Polmueller's motion to dismiss will be granted, and Plaintiff will not be permitted leave to amend as it appears from the face of the complaint that it would be futile.

### 3.    Section 1983 Summary

For the aforementioned reasons, the Section 1983 claims against MHM will proceed because Plaintiff has properly alleged a policy or practice on the part of MHM which caused it to be deliberately indifferent to Holguin's serious medical needs. Likewise, Plaintiff has properly alleged that Dr. Bauer knew of Holguin's propensity for suicide and disregarded this risk, thereby being deliberately indifferent to Holguin's serious medical need. As such, the Section 1983 claim against Dr. Bauer will be allowed to proceed. However, Plaintiff has failed to show that Dr. Polmueller had knowledge and disregarded Holguin's propensity for suicide, and the Section 1983 claim against Dr. Polmueller will not proceed.

**B.** **Corporate Liability**

In addition to her federal claims, Plaintiff brings a state law claim of corporate negligence against MHM. Defendants argue that corporate negligence is a very limited cause of action which can only be brought against hospitals, not private medical providers. The court disagrees.

A claim for corporate negligence arises, not from the actions of individuals, but instead because of the policies or actions of an institution. *Fox v. Horn*, 2000 WL 49374, at *7 (E.D. Pa., Jan. 21, 2000). Corporate negligence was first applied to hospitals in *Thompson v. Nason Hospital*, 591 A.2d 703 (Pa. 1991), wherein the court concluded that a hospital could be held liable if it breached any of the following: "(1) [the] duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) [the] duty to select and retain only competent physicians; (3) [the] duty to oversee all persons who practice medicine within its walls as to patient care; and (4) [the] duty to formulate, adopt and enforce adequate rules and policies to ensure quality care to the patients." *Thompson*, 591 A.2d at 707. In addition, a plaintiff must show the institution had actual or constructive knowledge of the policy which created the harm. *Fox*, 2000 WL 49374, at *7. Finally, "the hospitals negligence must have been a substantial factor in bringing about the harm to the injured party." *Id.*

Defendants here argue that only hospitals can be held liable for corporate negligence, and not entities such as MHM. The Pennsylvania Supreme Court has not yet ruled on this issue. When a states highest court has not yet ruled on an issue, and when there is no statutory guidance, federal district courts must attempt to predict how the highest state court would rule. *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991).

The court agrees with its sister court in the Eastern District and with other lower Pennsylvania Courts, that if the Pennsylvania Supreme Court were to address the issue, they would hold that private companies such as MHM can be held liable for corporate negligence. *See Fox*, 2000 WL 49374 (extending corporate liability to Correction Physician Services, a corporation which supplies medical care to state prisons); *Oven v. Pascucci*, 2000 WL 1876811, 46 Pa.D.&C.4th 506 (2000) (extending corporate liability to physician owned and operated optometry facility); *Shannon v. McNulty*, 718 A.2d 828 (Pa. Super. Ct. 1998) (expanding the holding in *Thompson* to HMOs). As the *Fox* court noted, one "factor that lead both the *Thompson* and *Shannon* courts to hold the institutions liable was the recognition that the patients in both cases had been constrained, in their choice of medical care options, by the entity sued." *Fox*, 2000 WL 49374, at *7. Furthermore, there is no difference between the services provided by a hospital and the services provided by

health care institutes in prisons.  As such, to conclude that the same duty of care is not owed to a prisoner as would be owed to any other patient is illogical.  *See generally Patel v. Himalayan Int'l Inst. of Yoga Sci. & Philosophy*, Civ. No. 94-1118 (M.D. Pa., Sept. 30, 1996) (J. Vanaskie)(applying corporate negligence to a holistic health program).

Furthermore, Plaintiff has sufficiently pled this claim.  The court has already concluded that Plaintiff has properly pled that MHM was deliberately indifferent in violation of 42 U.S.C. § 1983, and for these same reasons, Plaintiff has properly pled the lesser standard of negligent.  Because the court agrees that a corporation which provides medical services must be held to the same duty of care as hospitals, and that Plaintiff has sufficiently pled the claim, Plaintiff's corporate negligence cause of action will remain and Defendants' motion to dismiss on this issue will be denied.

**IV.  Conclusion**

For the aforementioned reasons, Defendants' motion to dismiss will be granted in part and denied in part.  Defendants' motion will be denied with regard to MHM and Dr. Bauer as Plaintiff has properly pled that they were deliberately indifferent to Holguin's serious medical need.  Defendants' motion will be granted

as to Dr. Polmueller as the complaint has failed to properly allege that Dr.

Polmueller either deliberately indifferent or even negligent. Leave to amend with

regard to Dr. Polmueller will be denied as amendment would be futile.

Furthermore, Plaintiff's claim of corporate negligence will survive and Defendants'

motion on this issue will be denied. An appropriate order will issue.


                                _____s/Sylvia H. Rambo_____
                                   United States District Judge

Dated: April 13, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELINA ZHENG as** | : | |
| **Administrator of the Estate of** | : | |
| **JOSEPH HOLGUIN.** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | Docket No. 4:09-CV-1028 |
| | : | |
| **SUPERINTENDENT JOHN A.** | : | |
| **PALAKOVICH, SUPERINTENDENT** | : | Judge Sylvia Rambo |
| **PAUL K. SMEAL, LISA G.** | : | |
| **HOLLIBAUGH, GEORGE WEAVER,** | : | |
| **LT. C. GROVE, MHM** | : | |
| **CORRECTIONAL SERVICES, INC.,** | : | |
| **DR. FRANZ BAUER,** | : | |
| **PRISON HEALTH SERVICES INC.,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

# O R D E R

For the reasons mentioned in the accompanying memorandum of law,

Defendants' motion will be **GRANTED in part** and **DENIED in part**:

1) The motion is **DENIED** as to Defendants MHM and Dr. Franz Bauer,

2) The motion is **GRANTED** as to Defendant Dr. Eugene Polmueller.

3) Defendants' motion to dismiss Plaintiff's corporate negligence claim is

**DENIED**.


                                            _____s/Sylvia H. Rambo_____
                                             United States District Judge

Dated:  April 13, 2010.