## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELINA ZHENG as<br>Administrator of the Estate of<br>JOSEPH HOLGUIN,<br><br>       Plaintiff<br><br>       vs.<br><br>SUPERINTENDENT JOHN A.<br>PALAKOVICH, SUPERINTENDENT<br>PAUL K. SMEAL, LISA G.<br>HOLLIBAUGH, GEORGE WEAVER,<br>LT. C. GROVE, MHM<br>CORRECTIONAL SERVICES, INC.,<br>DR. FRANZ BAUER, et al.,<br><br>       Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: Docket No. 4:09-CV-1028<br>:<br>: Judge Sylvia Rambo<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## M E M O R A N D U M

Before the court is Defendant Rosalia Dominguez, M.D.'s motion to dismiss, (Doc. 99), Plaintiff's Second Amended Complaint (Doc. 93). For the reasons that follow, the motion will be denied.

## I.      Background

### A. Facts[1]

At all times relevant to this complaint, Joseph Holguin was an inmate at the State Correction Institution- Smithfield ("SCI-Smithfield"), located in Huntington County, Pennsylvania. Before being transferred to SCI-Smithfield, Holguin had been an inmate at SCI- Montgomery. While at Montgomery, it was determined that Holguin had long term depression issues and would need continuing

---

[1]    All facts are taken from Plaintiff's Second Amended Complaint, and for purposes of this motion are accepted as true. In addition, the facts of this case have been fully set forth in this court's memorandum and order dated April 13, 2010, and only those facts as they pertain to Defendant Dominguez will be repeated here.

treatment.  It was also determined that he should be closer to his family, and was thus transferred to SCI-Smithfield on August 10, 2006.

September 5, 2006, was the first time Holguin, since being transferred to SCI-Smithfield, sent a request slip to prison medical staff informing them that he was severally depressed and wished to be placed on medication.  On October 5, Holguin sent a request slip again asking that he be placed on medication because he was afraid he was going to hurt himself.  Following these requests, on a monthly basis, Holguin sent requests slips to various prison personnel explaining his depression and requesting medication.

On October 2, 2006, Holguin was told by a counselor that the psychiatric department would be informed that he wished to see a psychiatrist.  On August 14, 2007, Holguin filed another Inmate Request indicating that he was very depressed and that he wished to be placed back on his medication.  He was told he would be seen by Dr. Dominguez.  On September 5, 2007, Holguin filled out another Inmate Request and was told he would get to see Dr. Dominguez that same day. Holguin was not seen by anyone on September 5, 2007, and was told on September 6, 2007, that he was not on the list to see Dr. Dominguez.  Holguin complained that he needed his medication stating, "I thought I would be able to handle not being on it, but I can't now I put in my last request on the 14th [of August].  I was told to wait till the 5th of this month and I did not get to talk to anybody.  I need my medication." (Compl. ¶ 77.)

On September 7, 2007, Dr. Dominguez saw Holguin.  Holguin informed her that he was feeling down.  Dr. Dominguez prescribed ten milligrams of Prozac, even though Prozac is normally prescribed in twenty milligram increments.  He was told on September 11, 2007, that he would be placed on his medication a day or two after meeting with Dr. Dominguez.  On September 14, 2007, Dr. Dominguez

2

changed Holguin's medication to twenty milligrams of Prozac and 100 milligrams of Elavil. However, Dr. Dominguez did not actually see Holguin until September 19, 2007. On this date she diagnosed Holguin as having "schizo-affective disorder major depressive disorder recurrent with psychotic features and borderline personality disorder." (*Id.* ¶ 81.)

On October 1, 2007, Holguin was placed in the Psychiatric Observation Cell ("POC"), where he remained until October 11, 2007. While in the POC, Holguin missed twelve meals and the Psychiatric Review Team determined that he was depressed. On October 4, 2007, Dr. Dominguez again met with Holguin, who told her he was feeling down and having suicidal thoughts. Dr. Dominguez increased Holguin's Prozac to forty milligrams, discontinued the Elavil and added various doses of both Sinequan and Depakene. On October 9, 2007, Dr. Dominguez again saw Holguin, who was covered in a blanket, would not go to the cell door, and refused to make eye contact.

On October 11, 2007, Holguin said he was depressed and checked himself into the Mental Health Unit for voluntary commitment. However, on October 15, 2007, he checked himself out. On October 16, 2007, Dr. Dominguez saw Holguin for the last time. She noted that he was "unfortunately" still in the POC while awaiting placement into the Restricted Housing Unit ("RHU"). (*Id.* ¶ 88.) Even though Holguin indicated he would harm himself if transferred out of the POC back into the RHU, Dr. Dominguez nonetheless sent him back to the RHU. Twenty minutes after Holguin was seen by Dr. Dominguez, Holguin told another counselor that he would hurt himself if placed in a jumpsuit. The counselor informed Dr. Dominguez of this. Dr. Dominguez responded that she believed Holguin was manipulative, and disregarded the threat.

Holguin was transferred to the RHU and placed on seventy-two hour observation, but was never again seen by a psychiatrist. On October 29, 2007, Holguin was found to have hung himself with a bed sheet in his cell.

Plaintiff claims that Dr. Dominguez was deliberately indifferent to Hogluin's serious medical needs by readmitting him to the RHU, despite her knowledge that Holguin was severally mentally unstable.

### B.     Procedural History

On June 2, 2009, Plaintiff, as Administratrix of the estate of Holguin, filed her original complaint. (Doc. 1.) Plaintiff has twice been given leave to amend the complaint, with the most recent filing being this Second Amended Complaint docketed on July 5, 2010. (Doc. 93.) On July 21, 2010, Defendant Dominguez field a motion to dismiss, (Doc. 99), followed by a brief in support on July 30, 2010, (Doc. 100). Plaintiff filed a brief in opposition on August 12, 2010. (Doc. 101.) The motion is now ripe for disposition.

### II.     Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

4

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).)  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g., Fletcher-*

5

*Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.**     **Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging Dr. Dominguez violated Holguin's Eighth and Fourteenth Amendment rights by subjecting him to cruel and unusual punishment through her deliberate indifference to his serious medical needs. Plaintiff also brings a state law claim for medical negligence.

**A.**     **Section 1983**

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendant's conduct must have a causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980). Furthermore, for liability to attach, it must be shown that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). In this case, there is no dispute that Defendant was acting under color of state law. Therefore, only the deprivation of a right, privilege or immunity under the Constitution need be discussed.

In the Third Circuit, the deliberate indifference of a defendant which leads to a prisoner's suicide can constitute a valid Eighth Amendment claim under 42 U.S.C. § 1983 if a plaintiff establishes the following three elements: "(1) the detainee had a particular vulnerability to suicide, (2) the [defendant knew of and disregarded that vulnerability],[2] and (3) those [persons] acted with reckless indifference to the detainee's particular vulnerability." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (citations omitted).

Plaintiff has sufficiently pled that Holguin had a particular vulnerability to suicide. Holguin had been diagnosed with depression and suicidal tendencies. He requested psychiatric help on multiple occasions and even stated in these requests that he was afraid he was going to hurt himself. It seems apparent that Joseph Holguin was concerned with the danger he posed to himself, and he expressed this concern on multiple occasions.

Plaintiff also sufficiently alleges that Dr. Dominguez knew of, and was deliberately indifferent, to Holguin's serious medical needs. It is specifically alleged that on multiple occasions, Holguin directly informed Dr. Dominguez that he was scared he was going to hurt himself, was feeling depressed, and had suicidal thoughts. Plaintiff alleges that by releasing Holguin back into the RHU, despite

---

[2]  The Third Circuit in *Colburn v. Upper Darby Twp.*, 946 F.2d 1017 (3d Cir. 1991), articulated the second prong of the test as whether the defendant "knew or should have known" of the prisoner's vulnerability, *id.* at 1023, but that standard has been modified by the Supreme Court. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that a defendant cannot be found liable under the Eighth Amendment "unless the officer knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Thus, the *Colburn* test has been re-characterized to conform to the standard established by the Supreme Court. Other courts have likewise held that the plaintiff in a prison suicide case must show that "'defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.'" *Minix v. Canarecci*, No. 09-2001, 2010 WL 668893, at *4 (7th Cir., Feb. 26, 2010). *Accord, Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006); *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

Holguin stating he would harm himself if place in the RHU, Dr. Dominguez was deliberately indifferent to Holguin's medical needs resulting in his eventual suicide.

These allegations are sufficient to permit Plaintiff's complaint to survive at this early stage in the litigation. Dr. Dominguez was aware of Holguin's suicidal ideations. Dr. Dominguez was Holguin's primary psychiatrist, and although she provided Holguin with medication, she was also aware that he was worried he would hurt himself if released back into the RHU. Despite this knowledge, Holguin was in fact transferred to the RHU and was not seen again by medical staff after October 16, 2007. These allegations raise a sufficient inference that Dr. Dominguez was aware of Holguin's serious medical needs and was deliberately indifferent to those needs. As such, Defendant's motion will be denied.[3] An appropriate order will be issued.

s/Sylvia H. Rambo
United States District Judge

Dated: September 20, 2010.

---

[3] As the court finds that Plaintiff has sufficiently pled the heightened standard of deliberate indifference, it in turn finds that Plaintiff has sufficiently pled negligence, and Defendant's motion on this issue is likewise denied.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGELINA ZHENG as        :
Administrator of the Estate of  :
JOSEPH HOLGUIN,           :
                                :
       **Plaintiff**           :
                                :
       **vs.**               : Docket No. 4:09-CV-1028
                                :
SUPERINTENDENT JOHN A.   : Judge Sylvia Rambo
PALAKOVICH, SUPERINTENDENT :
PAUL K. SMEAL, LISA G.       :
HOLLIBAUGH, GEORGE WEAVER, :
LT. C. GROVE, MHM          :
CORRECTIONAL SERVICES, INC., :
DR. FRANZ BAUER, *et al.*,     :
                                :
       **Defendants**       :

## O R D E R

In accordance with the accompanying memorandum of law, it is hereby ordered that Defendant Dominguez's motion to dismiss, (Doc. 99), is **DENIED**.

                                                  s/Sylvia H. Rambo
                                                  United States District Judge

Dated: September 20, 2010.